IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUSSELL W. CHEATER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-322-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Russell W. Cheater requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2]Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 6, 1974, and was thirty-six years old at the time of the administrative hearing. (Tr. 54, 136). He completed high school and has worked as an industrial truck operator, hand packager, and furniture assembler. (Tr. 68, 157). He alleges that he has been disabled since May 1, 2008, due to heart problems, breathing problems, chest pains depression, anxiety, problems concentrating, and chronic headaches. (Tr. 152).

## Procedural History

On May 20, 2009, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Michael A. Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated January 6, 2011. (Tr. 36-46). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform a wide range of light work, *i. e.*, he could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit six hour hours in an eight-hour

workday, but that he had the additional limitations of being unable to climb ladders, scaffolds, or ropes, and only occasionally climbing stairs. (Tr. 40). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies that he could perform, *e. g.*, housekeeping cleaner, food packager, or food production worker. (Tr. 46).

## Review

The claimant contends that the ALJ erred by (i) failing to find his mental impairments to be severe impairments, (ii) by failing to find that his impairments met Listing 4.02 for chronic heart failure, (iii) by failing to properly assess his credibility, (iv) by improperly determining his RFC, and (v) by failing to properly find work he could do. The undersigned Magistrate Judge finds the claimant's fourth contention persuasive, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of history of congestive heart failure, cardiomyopathy, hypertension, osteoarthritis, and obesity. (Tr. 38). Additionally, the ALJ found that the claimant's mood disorder was nonsevere. (Tr. 28). The relevant medical evidence reflects that the claimant was admitted to the ER on September 9, 2007, for chest pains and shortness of breath. A CT thorax with contrast revealed no acute cardiopulmonary process without evidence of pulmonary embolus, mild cardiomegaly, and diffuse fatty infiltration of the liver. (Tr. 261). On November 21, 2008, the claimant was admitted to Sequoyah Memorial Hospital with congestive heart failure, COPD with upper respiratory infection, and history of atrial fibrillation with

rate control. The claimant was transferred from SMH to St. Francis Hospital with sepsis, hyperpyrexia, a resolved urinary tract infection, congestive heart failure by history with normal echocardiogram, history of atrial fibrillation with abnormal EKG, and therapeutic Coumadin level, improving. (Tr. 312). A November 25, 2008 echocardiogram was very limited but revealed no pericardial effusion. (Tr. 639). On August 3, 2009, a consultative examiner diagnosed the claimant with chest pain probably due to congestive heart failure, morbid obesity, and hypertension. (Tr. 453). An August 3, 2009 mental status exam revealed that the claimant had adjustment disorder with depressed mood, and the consultative examiner stated that the claimant's condition had the potential of becoming chronic. (Tr. 462). This consultative examiner further opined that the claimant's level of adaptive functioning was not consistent with a diagnosis of mental retardation. (Tr. 463).

     At the administrative hearing, the claimant testified that he became disabled when he went to the hospital May 1, 2008, and was diagnosed with congestive heart failure. (Tr. 57). He testified that he has pain daily, in the form of bad headaches two to three times a week, chest pains, stomach pains, and back pains. (Tr. 57-58). Additionally, he testified that he takes an antidepressant. (Tr. 59). He stated that his congestive heart failure causes chest pains and fluid retention, as well as shortness of breath, and that he has a hard time sleeping at night so he lies down for seven or eight hours during the day. (Tr. 59-60). Additionally, he explained that he has low energy, is tired all the time, and that sitting and resting do not refresh him. (Tr. 60). He lives with his mother, who does the cooking, cleaning, and grocery shopping, as well as most of the driving. (Tr. 61). He

testified that he used to play golf and go fishing, but that he had only been fishing once recently, and that he had no social activities. (Tr. 63). As to his capabilities, he stated that he could sit for forty-five minutes before he needed to move around, that he sometimes used an old golf club to lean on when he walked around outside, that he could not lift ten pounds repeatedly during the day and he believed he could only do it two or three times, and that he could not squat. (Tr. 65-66).

In his written opinion, the ALJ summarized the claimant's testimony, as well as most of the medical evidence. At step two, the ALJ noted that he had found the claimant's mental impairment to be nonsevere, and did not mention it at step four. At step four, the ALJ found that "[t]he medical evidence does not demonstrate that claimant's condition is as severe as alleged." (Tr. 42). He then found that the claimant's congestive heart failure was not as severe as when he was hospitalized in September 2007, that there was little evidence to support the claimant's complaints of headaches, and further noted that a consultative examiner found he had the full range of motion. (Tr. 43). As to the claimant's daily activities, the ALJ found that they could not be objectively verified, and that he had difficulty attributing the claimant's alleged limitations to his medical conditions. The ALJ then found the claimant not credible, and that the evidence supported a finding that the claimant could perform a wide range of light work. (Tr. 44-45).

Although the ALJ found the claimant had several severe impairments, he actually devoted a great deal of time at step four to discrediting the claimant's complaints of congestive heart failure, headaches, and osteoarthritis, without explaining how these

-6-

severe impairments would affect his ability to work.  An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation.  *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two.  He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].  Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain.  He did not include any such limitations in either his RFC determination or his hypothetical question.  Nor did he explain why he excluded them.  In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

      The claimant also argues that the ALJ erred in failing to classify his mood disorder as a severe impairment.  Because the ALJ did find that the claimant had other severe

impairments, any failure to find an additional impairment to be severe at step two is considered harmless error because the ALJ would nevertheless be required to consider effect of these impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523.  *See also Hill*, 289 Fed. Appx. at 292 ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because the ALJ failed to properly account for, at the very least, the claimant's mood disorder in assessing his RFC.  *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further

consideration. This was reversible error."). *See also Washington v. Shalala*, 37 F.3d 1437, 1439-1440 (10th Cir. 1994) ("Although the ALJ mentioned the plaintiff's vision loss [blind in his right eye and had impaired vision in the left eye] when summarizing the medical evidence, he did not discuss how that loss impacted plaintiff's ability to do work. . . . We note at the outset that the ALJ failed to consider plaintiff's vision loss in conducting the step four inquiry. This failure, alone, would be grounds for reversal."); Soc. Sec. Rul. 83-14, 1983 WL 31254, at *5 ("Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others . . . will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).").

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included a Physical RFC assessment by Dr. Terry Hoyt of SMH Family Medicine, and Mental Diagnostic Evaluation by psychologist Patricia Walz, Ph.D. (Tr. 19-32). Dr. Hoyt stated on March 3, 2011, that the claimant could sit up to three hours in an eight-hour workday, stand up to two hours and walk up to one hour, that he needed an assistive device to stand, walk, and balance, and that he would need rest breaks at hourly intervals or less. (Tr. 20). Additionally, he indicated that the claimant could frequently lift five pounds, occasionally lift up to ten, and rarely lift up to twenty pounds. (Tr. 20). He further stated that the claimant could occasionally work in extended position, but that he could only rarely work above shoulder level, overhead, grasp, finger, bend, squat, crawl, stoop, crouch, or kneel, and never balance, rarely climb stairs or ramps, and never ladders

or scaffolds. (Tr. 22). In addition to a number of environmental restrictions, Dr. Hoyt remarked that he suspected anxiety/depressions, and that the claimant reported being afraid of having a heart attack if he overexerts. He then stated that the claimant was currently unable to maintain gainful employment. (Tr. 21-22). Psychologist Patricia J. Walz, Ph.D. completed a Mental Diagnostic Evaluation of the claimant on February 24, 2011. Dr. Walz diagnosed the claimant with depression secondary to his chronic pain and heart condition, rule out borderline intellectual functioning, and assessed him with a Global Assessment of Functioning range of 45-50 based on suicidal ideation. (Tr. 27). Dr. Walz found no evidence of exaggeration or malingering, and recommended an intellectual evaluation. (Tr. 28). She also completed a Mental RFC assessment, checking mostly moderate, marked and severe impairments that she based on her psychological evaluation and a review of the medical file. (Tr. 29-31). She estimated that the claimant's mental RFC had the above-reflected limitations for approximately two years. (Tr. 32). The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

     First, the 2011 evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Neither assessment was presented to the ALJ prior to his decision and was thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it]

would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96.  The evidence must "reasonably [call] into question the disposition of the case." *Id.  See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996).  In finding the claimant not disabled, the ALJ relied, at least in part, on the lack of records demonstrating that the claimant had functional limitations.  But both assessments indicate that the claimant's conditions, in combination, could affect his ability to perform work on a full-time basis.  This evidence suggests the claimant has impairments discounted in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b).  The claimant's date last insured (December 31, 2012) had not expired as of the date of the ALJ's opinion, and is therefore chronologically relevant to the ALJ's decision.  The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. § 404.970(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the aforementioned standards.  In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

Because the ALJ failed to properly account for all of the claimant's impairments, severe and non-severe, and further had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma